The next case this afternoon is 419-0297, in re Estate of Short. For the appellant is Thomas, excuse me, for the appellant is Eric Hyam. Yes, sir. You are he? Yes, I am. And for the appellate, Jerry Bauer, you are he. Okay, Mr. Hyam, is that pronounced correctly? Correct. Okay, Mr. Hyam, you may proceed, sir. Thank you. Apologies, Your Honor. If it pleases the Court. Counsel. Counsel. Your Honors, essentially what is presented here today in this appeal is a question of whether or not a dismissal with prejudice of my client's claims were appropriate based on the three items that were presented in Judge Reif's docket order from March 12th of 2019, and those three issues were the question of standing, whether or not my client had a properly alleged standing to pursue the actions, whether or not somehow this oral contract was barred by the statute of frauds, and whether or not there was support or evidence for the ability to set aside the documents or the inter vivos transfers for lack of capacity. Starting with the first issue, as was noted in our brief, my client and the initial petition, the amended petition, were both rife with information regarding how my client stood in, how Mr. Jeffrey Short stood in the position to have a standing in this case. He was, as he alleged, he was the child of Mr. William Short, who had, according to our to dispose of their jointly held assets. The entirety of their joint estate consisted of essentially a home that they owned in joint tenancy, an investment account that they owned in joint tenancy, and a number of personal effects, household items, tools, etc. Their 2016 wills are identical. They provide for reciprocal distributions to spouses. They provide for some personal property distributions to each child. Then they provide for everything else to be split equally, including all of the joint tenancy property. It seems to follow, generally, that the case follows relatively in line with the case of Bonkowski versus Kucharski, which was cited in our various pleadings. That's located at 13 Illinois 2nd, 443. In fact, Your Honor, that case is so similar to this one that there's only one deviation between the facts in that case. The only deviation in that case is that in the Bonkowski case, there was one document, one will signed by both parties. Rather than in our case, there are two wills signed separately at the exact same time with the exact same distributions. In it, though, in both cases, our case and the Bonkowski case, the testators had both been previously married. They had essentially all joint property. They had commingled that joint property into one joint estate. They had provided for an equitable distribution between the two families, and they had expressed intent both to their children and others as to what it was that their intent was. Again, though, my client was... What is that case? This. Sorry. Bonkowski, B-O-N-C-Z-K-O-W-S-K-I versus Kucharski, K-U-C-H-A-R-S-K-I. Can you cite that in your brief? I look at the table of contents. I don't see it mentioned there, and I'm just looking for your brief. I don't recall seeing it, and maybe I just missed it. I'll just use it. Sorry, Your Honor. It was not cited in our brief. It was cited in all of the prior filings in the trial court. That's where my apologies on that. I don't read all the prior filings in the trial court, and I'm not familiar with this case at all, and what it's supposed to say. Okay, go ahead. Your Honor, I'm sorry. As to the issue of standing, my client had aptly alleged that he was a third-party beneficiary of disagreement between his father and his stepmother as to the distribution of their joint estate. Moving to the second... Judge, I have a question for you. Yes, Your Honor. So, on the issues presented for review, you indicate that you're asking whether or not the trial court erred in granting the motion to dismiss for lack of capacity as to the TODI and investment transfer. Are you alleging that there was no capacity to make the change in the will? Yes, Your Honor. So, you're also alleging that. We also allege that there was a lack of capacity as to the change of the will or the revocation of the prior will as well. In concert with the prior will couldn't have been revoked at the time that it was revoked because Mr. Short had passed away, making the contractual obligation... Well, that's not a capacity issue. Certainly, Your Honor, I would agree with that. They're two separate issues as to the breach of contract question and then the lack of capacity question as to the transfer on death instrument and the pay on death for the accounts and the lack of capacity. But you're also saying she lacked the capacity to change the will. Correct. Okay. What is the evidence that shows in this case the mutual wills were executed pursuant to a binding contract that they would be irrevocable? Well, at the stage that we were at, that evidence had not been entirely presented because we were simply at the motion to dismiss stage. Well, you have to plead facts. Absolutely, Your Honor. What were the facts you pled that show that the mutual wills were executed pursuant to a binding contract to be irrevocable? That the items that were presented in the complaint, Your Honor, or the first amended complaint, were that the wills were executed at the exact same time with reciprocal provisions, again, providing the same distribution to each family, that both Mr. Short and Mrs. Short expressed intent to others, including their children, specifically to my client and his family, that that was their intention, was to provide for a joint distribution. Assuming that's true, why does it matter if they didn't put that intention in the written document? Because the intention can be... I don't believe that the law has anything in it that specifically says it has to be in writing to show that it was intended to be... Well, these are written documents. If they are intended to be irrevocable, doesn't there have to be some writing to that effect? I don't believe the law says that. In fact... There's nothing in the wills that indicate that they're a contract, that they're irrevocable. There's nothing that indicates that it's anything more than their intention at the time. Is there something you pled that would go beyond that? Other than that, throughout, following that will, following the preparation of the November 2016 wills, both of them expressed that intention to other parties, to third parties. And when you say expressed that intention, are you saying they expressed the intention that they were irrevocable, or the intention that this is what we intend to happen when we die? They expressed the intention that this was a mutual decision between the two of them as to how their joint estate was supposed to be divided. I don't know of any specific facts at the moment. Irrevocable means... And we can't change our minds later on. Understand. Okay. Isn't that different than this is my current intention, this is our current intention? And the fact is, how old were these people when they wrote the wills? Weren't they in their 70s or something? Somewhere in the neighborhood of their 70s. Okay. Well, so reasonable adults in the 70s who are married would realize that at some point, one or the other of them is going to die. And then, as in this case, she inherits pursuance of the will. If, in fact, there was a concern that, under those circumstances, you should not be permitted to change your mind about this position, shouldn't there have been something to that effect that they signed or agreed upon? I would agree with Your Honor that in hindsight, being 2020, certainly if that was, which, again, my client's position is it was the intention of both testators, not to be able to revoke that, but it should have been. Well, let's assume that's the case. There's no question about it. That was the case when they signed these wills. The real question here is, is there anything that prohibits her from changing her mind after she inherits? So that the earlier intention becomes a matter of irrevocable agreement. Isn't that really what we're talking about? Absolutely. That is the ultimate crux end of this case, is whether or not . . . Well, then, what is their . . . Now, it's bad form. We could all agree. You know, this is, you know, she had this agreement. She shouldn't have changed her mind. Her late husband was counting on it. I think that's all pretty clear. But normally, people can change their wills anytime they wish. This was now all her property. She changed her will to give it to her daughter. So the question is, what barred her from doing that? And, as a matter of fact, when you talk about how there was testimony that they agreed that this is what they wanted, even from what you attached in your pleadings, was there anything that somehow they had made this representation to be irrevocable? If I can go back to the von Tauschke case, and I apologize, it wasn't cited in our brief. He cited it. I didn't know . . . well, it was cited in the Applebee's brief, so I apologize for that. That case does discuss the issue of whether or not there was a contractual or an agreement between the parties that then becomes irrevocable upon death. It's also a fact-specific . . . that question can be determined from the surrounding circumstances. And that's the circumstances that I was alluding to earlier in terms of what it was that these parties were doing when they put these wills together, when they put this intention of their distribution, the distribution of their joint estate out there. And certainly, my client would never have argued that if Mrs. Short had lived for 15 more years with stage 4 cancer and what all she was going through at the time, and all this money had been spent, I don't believe that . . . and I don't believe my client would have any argument in that case that something was erroneously done. The erroneous action comes from this decision to completely exclude him from what was the original intention of his father, which was that if there's something left, my son is supposed to have a part of this as well. That's where this comes back down to. But I think the question that you're asking me in terms of what is the . . . what's the information that this was irrevocable, it's from the surrounding circumstances that there was a contract between the two of them or an agreement. Let me be more clear. No one's disputing them as a contract. No one's disputing these are mutual wills. No one's disputing that this was their intention at that time. You're arguing that an inference that not only can be drawn but must be drawn in that is the provisions of these wills are irrevocable. And I'm thinking, where's that coming from? I think the inference of that comes from the idea that at the time of Mr. Short's death, the agreement between them was that their children would share equally in what was left of their joint estate after the passing of the second spouse. What essentially happens here is that Mrs. Short then makes a unilateral decision to change that agreement. It's not a . . . And what bar her from doing that? Why was the mutual will, those terms, irrevocable just because it was a mutual will? What about . . . are you saying all mutual wills are irrevocable under these kinds of circumstances where one of the signatories dies? It's always the case that the survivor can't change the will? I believe that the question becomes whether or not there was an agreement between the party, whether there was a contract, and whether or not the two parties had entered into an agreement as to the distribution. And at the time, the law makes it irrevocable. If you and I . . . if my spouse and I enter into an agreement to distribute our estate in a particular manner, and I die with that understanding and with that agreement, my wife doesn't have the ability to unilaterally make that change. So answering my question, then, your position is that all mutual wills, that being mutual wills you just described, are irrevocable. It's irrevocable if, from the surrounding circumstances or from the language of the document . . . Well, you see, the will, when signed, was irrevocable. The mutual wills, when signed, were irrevocable or they weren't. Now, when they signed these mutual wills, they were mutual wills, were they irrevocable then? And, if so, is it your position that, under your own eyewall, all mutual wills are irrevocable? They were . . . they were . . . I would agree that at the time they were executed, they were irrevocable, absent an express agreement of the parties to change them, or absent agreement of the parties to change them. By new wills? By new wills or by some other written . . . So, mutual wills executed by an elderly couple is always then going to . . . The terms thereof are always going to be irrevocable by the survivor of the two, under your own law. I think the answer is likely more nuanced than that. But, generally, I believe that the law would suggest that wills entered into that are essentially expressing some amount of an agreement between the parties as to the distribution are irrevocable. I'm not sure what that means, what you just said. I couldn't understand the nuance. I mean, I'm a bright line kind of guy. Okay. The Abigail and Jeffrey . . . Well, Sarah Short and Jeffrey Short were kids, I guess. Sarah and William. Good. They executed these wills. Mutual wills, I don't think they executed that. They've executed these wills. Are they irrevocable? Are they signed? Does this mean the survivor couldn't change them? Generally, yes. Absent some expressed intention not to do that. And that expressed intention could come from a number of different . . . Well, wouldn't that be kind of a dramatic change in Illinois law if we were to conclude that all mutual wills are irrevocable? Yes. It would be . . . I think generally it's been treated as if all mutual wills are allowed to be changed. Well, then going back to the pleading here, and your time's up, but I want you to answer this question too. Even under your idea that there are some nuances, maybe this is a mutual will, and even if we assume all mutual wills aren't going to be irrevocable, this mutual will was irrevocable because why? Because of the agreement between the parties that was expressed, and the facts and circumstances surrounding it that it was contractual, and then upon the death of William, it became irrevocable because he was no longer available to change his mind. Okay. So your position is a mutual will may not be irrevocable, but once one of the parties, one of the signatories dies, then it becomes irrevocable. I think the presumption is that it is irrevocable. Okay. Thank you, Counsel. Thank you, Your Honor. Mr. Bauer? May it please the Court, Counsel. On March 12, 2019, the trial court granted defendants' motion to dismiss on three grounds. One, that plaintiff failed to provide support for his standing. Two, that the complaint is barred by the statute of frauds. And three, that plaintiff failed to provide any support or evidence regarding the lack of standing. And I think, I want to kind of jump into what I think is the meat of the case here, is the question of the contract that we've been discussing for the last 20 minutes. The plaintiff is pleading the existence of an oral testamentary contract between the two decedents. I think it's important to point out that the 2016 wills were not joint. They were mutual. They were two separate documents. You're disputing that they were mutual wills? That they had similar, if not very identical, devisements to the heirs. Yes, I think that the record shows that it was, if I die, everything goes to William, et cetera. So they were mutual wills? They were mutual wills, and they were separate, but not joint wills. Okay, so there were two documents instead of one. Right, and I think that makes a distinction. There is a greater presumption that a mutual will is irrevocable because it's signed by two people, like an agreement, than two separate documents signed individually. So if there was one document you would have said to Mr. Hyam, you're right. No. No? No. If there were language in that joint document that said this document is irrevocable upon the death of the first spouse, then I would say, yes, you have a contract. You have irrevocable wills. But I think it's important to point out again that there is no contractual language in either will. There's no language about irrevocability in either will. And I think it's also, as far as making inferences in the case, that it's also important to point out that the same attorney, Mr. Eddie Carpenter in Jacksonville, drafted both the 2016 wills for William and for Sarah, and also Sarah's 2018 will revoking her 2016 will. Why is that significant? I think that if any party to the case, or not a party to the case, but anybody associated with the case, would have information and would know about the contractual nature of these wills, it would seem that it would be the attorney who listened to them and counseled them and drafted the wills. Sarah hires her and says, I want to change my will. Is he going to say, oh no, I can't do that? I think he would have had a conversation with her and said, it looks like in your 2016 will says that you can't do this. And I think he, like most attorneys, would like to avoid malpractice suits. Okay. But going on, and you touched on this, and I'm glad you did, that the only evidence pled in plaintiff's complaint outside of the wills, because the wills themselves do not make a contract, the only evidence pled is that the, William and Sarah had discussions with their family members and the plaintiff that this was their intent. That that is not, that it is not pled that William talked to Jeff and said, hey Jeff, your stepmom and I have agreed that these wills will be irrevocable and we've made a contract. We've agreed that one of us can't change our will after the first of us dies. It's just saying, me talking to my son when he gets older, hey son, mom and I have wills, this is where they are, this is what they say. I think that creates a contract. Counsel, you filed your motion based on 2-615 and 2-619. That is correct, Your Honor. So as to what you're talking about now in terms of failing to state a cause of action, was it your position that under 2-615 there was no cause of action stated with what was pleaded in terms of the irrevocable contract? That even considering what opposing counsel pled, that doesn't state a cause of action showing that the wills were irrevocable. Right, and under the 2-615 failure, substantially failing and substantially insufficient in law, that the plaintiff did not plead even the elements of the contract. There's no pleading about consideration, offer, acceptance. So that is one ground upon which the court was silent that I think the dismissal could also be affirmed. And what about the capacity issue? Would you take the same position on that in terms of the failure to state a cause of action with what was contained within the pleading? Just simply pleading she has cancer and is on pain medication. Is that sufficient to state a cause of action as to capacity? No, Your Honor. I believe it is not. This is a fact pleading state and you must plead the elements of the cause of action for which is in the complaint. And the plaintiff did not plead the elements required of lack of capacity. He did not plead that the tester didn't know or remember the natural objects of her bounty. He didn't plead that Sarah could not comprehend the time and character of her property. He didn't plead that she did not make a plan of distribution of her property according to the elements of capacity. I'd say that it fails. The complaint fails under 2615 under lack of capacity and also under contract. And further, it also fails under 219 regarding the statute of frauds that the complaint is barred by the statute of frauds. And that's what the trial court found in their order. And there are at least three reasons, but I think I'll skip one and just focus on two. Before you do that, I found it a little odd trying to resolve it on the standing issue. That seems to be related to 2619. So basically you're saying that there's an affirmative matter that defeats the claim. Was that your position that the standing issue should be upheld in your favor based on 2619? Because you don't get to the standing issue unless you first address whether or not the wills are irrevocable. Right? Right. So I would say that the lack of standing issue that the trial court found correctly regarding the lack of standing issue was because the plaintiff cannot be a third party beneficiary to a contract that doesn't exist. Yes, exactly. So I'm thinking that's 2619. Because you're basically going to accept the allegations, as Justice Steigman frequently reminds us, the 2619 motion is the yes but motion. Right. So if we're looking at that and we say, okay, yes, there's a contract. There's no contract, but if we assume there's a contract, but because you're not a beneficiary of the contract as it exists, then you don't have standing. I mean, it's just kind of a strange resolution to me. I'm sorry, I don't have all of my briefs exactly in my head right now, but I do believe that if that is what I said or if that is what I wrote, that there may have been a mistake on my part. That the lack of standing really should be a 2615 issue, that it's insufficient, substantially insufficient law for him to have lack of standing because he claims to be a third party beneficiary for a contract that doesn't exist. But the standing issue is 2615. Right. So what motion? Well, you have the stated cause of action, 2615. Standing is an affirmative defense. That's the 2619. Right. Okay. You heard Mr. Hyam talk about the Mankowski v. Kurchevsky case, which is not in his brief, but is in yours. And the only distinction you draw, apparently, and I want to ask a few of the others, is that the will in the Mankowski case was a joint will. Whereas here it's mutual wills on multiple documents. Is that it? It's pretty clear on this point that absent some other agreement, some other written contract, something else, that two mutual wills by themselves, even if they have similar provisions, even if they're signed at the same time, do not create a contract. And the only other fact in the pleadings from the plaintiff's complaint is that these discussions of the intent of the distribution of the estate after both Mr. and Mrs. Short were deceased. Well, I raise it because I'm just wondering if there's any, what the Mankowski v. Kurchevsky case says that Mr. Hyam thinks is very important. And if you have any reason to think it isn't, other than it's one document there and here are the other two. Right. It's not the only analysis you provide. I'm willing to give you a chance to provide further if you have it. I. The. So I don't want to. Yeah, I don't. And I don't want to. Go ahead. But I'll let you continue. Otherwise. But I think it's without without having this specific citation, I think it's pretty well settled in Illinois law that you that a will is ambulatory and can be changed as long as the person is still alive and that the person has still has capacity. I do want to at least briefly touch on the statute of frauds issues that the plaintiff claims that the statute of frauds do not apply in this case regarding real estate because the statute of frauds only applies to the sale of the sale of lands, not to devisements. And I think that is untrue based on the face of the statute, the statute of frauds. And it also includes hereditamins in this case, the home that. Well, regarding the application of the statute of frauds in this case, let me ask you, assuming that there was a separate paragraph in each of these wills that said, and I agree that this is. I agree with my spouse that this is an irrevocable will that we are both bound after this not to change it unless we mutually agree to change the will. And if one of us dies, then the survivor is bound to these terms. So addressing all this irrevocable stuff, it's your position that that would be in violation of the statute of frauds. If that were not in writing, because there's. Well, it is. It's in the will. I don't think I don't think there is. But I don't think there's anything in the will that creates a contract between the two of them. Anything in the two wills that creates a contract. There's no there's no offer acceptance consideration. They're each making individual documents. And then once once William passed away, I don't I don't think there was anything barring Sarah from changing or revoking her will. It would survive a statute of frauds argument if it were one document containing multiple signatures. Say the same stuff I just said. I think it. If it were a mutual will, the argument, the presumption that it was irrevocable upon the death of the first spouse would be stronger. Well, I want to avoid presumption. Essentially, what I'm asking is the flip side of what I was asking was to hire. Can you ever write an irrevocable mutual will? You seem to be suggesting I think you can very simply put in a provision in a mutual will that says this will becomes irrevocable upon the death of my spouse. Well, that's what I described. But you said that wouldn't that wouldn't cut it. No, I then then then I miss this under and misunderstood. But if if that contractual language was in a mutual will, then yes, I think that creates that would create a separate documents. Even if they were separate. Yes. Even if Sarah signed hers and her spouse signed his. He's contained a provision that we agree. This is going to be an irrevocable document. And that when one of us dies, the other is henceforth borrowed from changing the terms of this will. Yes, I agree that if if that were. Yes, that would create an irrevocable will. Then they'd have a cause of action. Yes, I think so. I don't know how I am on time right now. I see no lights. All right, go ahead. We'll come on with two minutes more. So I think we've gone over to the real estate part of statute of frauds that it clearly in the clearly in the complaint. They're referring to the house. And this is this is part of the estate. And to devise property that that must be in writing. And in this case, there's not a contract in writing. The agreement is oral. Also, I think probably more interestingly, with my small amount of time I have left, is that the plaintiff argues that the statute of frauds doesn't bar his claim because the contract could have been could have been completed in a year. And there are Illinois Supreme Court cases that speak against that as far as lifetime employment contracts. The court in McHenry State's 1997 case that inherently a lifetime employment contract anticipates a relationship of long duration, certainly longer than one year. And I think identical reasoning applies. In this case, a testimony contract could be completed, could be completed in one year. The same reason that a lifetime contract could be completed in a year by the death of the tester or the death of the employee. But I think it also anticipates a relationship of longer than one year. If there was, so that the same reasoning applies why the Illinois Supreme Court decided that lifetime employment contracts should be in writing. I think the same reasoning could be extended to testamentary contracts. The testamentary contracts, because they're intended to be longer than a period of one year, or at least of a long duration, should also be in writing. And that would be, there are not cases on that now, that would be an extension of, an extension of reasoning from the previous. Because now the question becomes if it can be performed within a year, then it's okay. Which would suggest that this would be okay in this instance. I mean, aside from other potential infirmities, but. Right. Okay. So. The time's up, counsel. Okay. Thank you very much. Mr. Higham, any rebuttals, sir? Okay. Your Honor, first I want to go back to Justice Holder White's question to my colleague regarding the 2619 question. And what I would add to that is, is that, and I believe this was noted in our brief towards the end, the question at the time that the trial court addressed the motion to dismiss, especially as it relates to a 2619 motion, was, the court was to look at that, look at all the facts pled, look at everything that was pled, in the light that's most favorable to the non-moving party, to my client at that time. He's to accept all well-pled facts as true. And in that case, there certainly, at least as it relates to the standing question, that would have to also include that, accepting, at least for purposes of the motion, that there was in fact an irrevocable contract in place, and that that irrevocable contract was to the benefit of my client, Jeff Schwartz. And therefore, he had standing to bring the claim, certainly at a minimum, as to the breach of contract question. So I think, I just want to clarify my client's position as to that, because I didn't get all the way through to the end. But that certainly becomes step number one. And Your Honor, I want to point back to Justice Stegman's question regarding the proof, or the question of whether or not the will has to have this information, or this particular irrevocable clause in it, etc. I would point out that in the Bonkowski case, that language doesn't exist. The only information that existed relative to this is a, there was some intention of the parties to not be able to revoke this will, was that it was in the same document. And then all of this other information outside of the document is what was used by the court in that case to determine that, in fact, this was intended to be an irrevocable document, or an irrevocable agreement between the parties to enter it, to divide or distribute or... And Counsel, share with us what that information outside the will, the document, in that case was, and then tell us, do we have it in this situation? Did you plead that in this situation? And I would say, Your Honors, that the information that the court looked to was, number one, was testimony from other parties as to what the intention of the testators was. That was part of what was in the Bonkowski case. That was something that we indicated that the parties had, in fact, had those conversations in this case regarding their express intention. The other part of it was that each, in Bonkowski, each was... The marriage between the testators was each, for each of them, a second marriage. They had each been married prior. They had children each from a prior marriage. One had one child. One had three children. The bequest in that estate was that the residue of the estate would be divided one-half to one family, one-half split between the other testators' three children from his prior marriage. In this case, the residual bequest in the mutual wills was one-half to my daughter, one-half to your son. I understand. This goes back to the question I asked you repeatedly in the beginning. What is there in the record before us that indicates that was anything other than a statement of present intent as opposed to it being an irrevocable agreement? Where is there any reference to irrevocability that you pled in this case? I believe we pled in there that the discussions between them... And, again, Your Honor, I think maybe I'm misunderstanding your question. No, weren't the discussions between them simply a reflection of this is our present agreement? This is what we agree to do right now. But then you're arguing to us, and that means they agree neither of them could subsequently change it because this was irrevocable. I will agree with you that there is nothing in the record that says either party said the other party can never change their will. I would agree with that. Is there something in the Bronkowski case that addresses this? This is the key issue. I keep asking you about this. Where is the irrevocable language? And the irrevocability comes from that the parties intended to have an agreement as to the distribution of their estates, and that upon the death of the first spouse, the second spouse... Cancel. That's their present intention. Let me state this again. You're right. The parties agreed to that. That's our present intention. What is there that says they can't change their minds? What is there that says the survivor can't change her mind, that this is going to be irrevocable, that we're bound by this forever? There was nothing in either case. Isn't that what you are asking us to conclude? And what was the evidence in the Bronkowski case? There was no evidence in the Bronkowski case that said either of them had ever agreed that there was no ability to change this document. The question of irrevocability came from the surrounding circumstances in that case. Your time is up, counsel. Thank you. Thank you. We'll take this matter under advisement.